(No. 17273.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES FOLIGNOS, Plaintiff in Error.

*Opinion filed June 16, 1926—Rehearing denied October 8, 1926.*

1. CRIMINAL LAW—*an indictment charging threats in foreign language need not aver language was understood.* An indictment which charges the making of threats in a foreign language with intent to extort money, in violation of section 93a of the Criminal Code, need not aver that the parties threatened could understand the language used, and where the threats are set forth in the indictment in both foreign and the English languages the defendant is sufficiently advised of the nature of the charge.

2. SAME—*section 93a of Criminal Code, providing penalty for making of threats with the intent to extort money, is valid.* Section 93a, added to the Criminal Code in 1901, providing a penalty for the making of threats with intent to extort money, does not violate section 13 of article 4 of the constitution, as it applies to a different crime than is referred to in section 93, and before there can be a conviction under section 93a it is essential to prove not only the threat to kidnap, maim or murder the person threatened or his relative, or to destroy his property, but also that the threat is made with the specific intent to extort money or other valuable thing from the person threatened.

3. SAME—*what may be shown where intent is essential element.* Where a specific intent is an essential element of a crime and the prosecution must prove this intent in order to secure a conviction, evidence of similar acts committed by the accused, happening at or about the same time, is relevant and competent to show such intent, notwithstanding the evidence offered tends to prove an offense other than the one with which the accused is charged, but evidence of conduct tending and offered to show bad moral character is not admissible.

4. SAME—*general rule as to admissibility of evidence.* The test of admissibility of evidence is the connection of the facts proved with the crime charged, and whatever testimony tends directly to show the accused guilty of the crime charged is competent although it tends to show him guilty of another offense, but evidence of other offenses wholly disconnected with the offense charged is not admissible, for the reason that it does not tend to establish the fact in controversy.

5. SAME—*what evidence of other threats is admissible in prosecution under section 93a of Criminal Code.* In a prosecution under section 93a of the Criminal Code for the making of threats with intent to extort money or other valuable thing from the person threatened, it is competent to show, for the purpose of proving the intent charged, that the accused at about the same time of making the threats charged in the indictment made similar threats against other persons with the same intent, as the intent is an essential element of the crime.

6. SAME—*act charged must be established before evidence of other acts is admissible to prove the intent—instruction.* Proof of offenses similar to the one charged and for which the accused is being tried is not admissible to prove that he committed the act charged but is only to be considered by the jury in determining the intent with which the act charged was done, where the jury are satisfied by the other evidence that the accused committed the act charged, and the trial court should instruct the jury that the evidence is received for the sole purpose of showing the intent.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM B. BROTHERS, Judge, presiding.

THOMAS A. GREEN, and CHARLES P. R. MACAULAY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, James Folignos, was convicted in the criminal court of Cook county of the crime of threatening, by written communication, to kill Valentino Parise or some

member of his family and to destroy the property of Parise, with intent thereby to extort money from Parise, and was sentenced to imprisonment in the penitentiary. He prosecutes this writ of error to reverse the judgment for the reasons (1) that the indictment is insufficient; (2) that the act under which the prosecution is brought is unconstitutional; and (3) that improper evidence was admitted on behalf of the prosecution.

A trial was had upon the fourth and sixth counts of the indictment and a general verdict of guilty was returned. The fourth count charged that plaintiff in error and others "did by written communications maliciously and willfully threaten to wound, maim, kill and murder another person, to-wit, one Valentino Parise, which said written communications are in the Italian language and in words and figures and letters as follows, to-wit, [photograph of letters in Italian language,] and the said written communications translated into the English language are in substance as follows, to-wit:

"'Dirty Villain that you are. Remember that this is a small warning that we have given you to let you understand that we are talking seriously. Therefore if you wish to communicate to accommodate this affair seek friends who are able to accommodate this affair, otherwise we will throw to earth your property and then you will be killed with all your family and without pity.
BLACK HAND.'

"'Dirty Villain that you are. Let us know if you think that you are to fool us you are thinking about. Therefore if you wish to communicate yourself and not send your son otherwise remember we are at the point of doing something right away and do not sleep otherwise shortly your destruction will commence of all your family.
BLACK HAND.'

—with intent thereby to extort from him the said Valentino Parise a large sum of money." The sixth count is the same, except that it includes Valentino's son, Gene Parise, as one of the persons threatened.

It is not alleged in either count that Valentino Parise or Gene Parise could read and understand the Italian lan-

guage, and it is contended by plaintiff in error that this was an essential averment. We do not agree with this contention. The indictment is in the language of the statute, and it sets out in both Italian and English the contents of the letters which it is charged the accused sent to the persons threatened. He was fully informed of the charge against him and had a full opportunity to prepare his defense. The indictment is sufficient. *Glover* v. *People,* 204 Ill. 170.

It is also contended that it was not proven on the trial that the persons threatened could read or understand the letters. With this we do not agree. Gene Parise testified that he could read and understand the Italian language, that he received the two letters, that he opened them and read them, and that he communicated their contents to his father.

The prosecution in this case is under section 93*a* of the Criminal Code, added by an act approved May 9, 1901. It is contended that this section is void for the reason that it amends section 93 without inserting at length in the new act the section amended, as required by section 13 of article 4 of the constitution. Section 93, which is a part of the act of March 27, 1874, prescribes the punishment for one who either verbally or by written or printed communication threatens to accuse another of a crime, or to expose any of his infirmities, with intent to extort money, or who threatens to maim or murder another or to destroy another's property, though no money be demanded. Section 93*a* prescribes a more severe punishment for one who either verbally or by written or printed communication maliciously and willfully threatens to kidnap, maim or murder another person or one related to such other person, or to destroy any building or other property belonging to another person, with intent thereby to extort money or other valuable thing. The latter section is not an amendment of the former. Section 93 refers to a crime different from the crime with which section 93*a* deals. Before there can be a

conviction under section 93*a* it is essential to prove not only the threat to kidnap, maim or murder the person threatened or his relative, or to destroy his property, but also that the threat is made with the specific intent to extort money or other valuable thing from the person threatened. The act is free from the constitutional objection suggested. *People* v. *Exton,* 298 Ill. 119; *People* v. *Jones,* 242 id. 138.

There is no direct proof of the fact that plaintiff in error wrote the letters set forth in the indictment. The conviction rests upon circumstantial evidence. Valentino Parise is an Italian who has been in this country a great many years. He owned two buildings on Front avenue, in the city of Chicago. In one he maintained an office where he sold steamship tickets and conducted other business connected therewith, and in the other building his son operated a restaurant. That section of the city of Chicago is commonly called Kensington and is populated largely by Italians. Shortly after the first letter was received a bomb was exploded in front of the restaurant and the building was damaged to the amount of $500. After the explosion Gene Parise called upon Vincenzo Calabrese, who conducted a drug store in the neighborhood, and told him he had come to settle the demand made in the letter. Calabrese told him he could have avoided trouble if he had come sooner but that he would call up the chief and·let Parise know on what terms they would settle. Parise did not return the next day as instructed, and about three weeks later a second bomb was exploded, causing damages to the building in the amount of $600. Parise went again to Calabrese and was sent by him to plaintiff in error, who operates a barber shop in Kensington. Plaintiff in error demanded that $2000 be paid, and Parise finally agreed to pay this amount. On the night following the making of the agreement Parise met plaintiff in error, and after further negotiations it was agreed that $1500 should be paid to satisfy the demand of the Black Hand, and that plaintiff in error

should receive an additional $250 for the expense he had incurred because of the failure of Parise to meet the demand sooner. This money was paid. The foregoing is the substance of the testimony on behalf of the prosecution. Calabrese and plaintiff in error deny that they wrote the letters or had anything to do with sending them or received any money from Parise. The jury evidently believed the testimony for the prosecution, and we see no reason for disturbing their finding on the facts.

For the purpose of showing that the letters were sent with the intent to extort money, the prosecution proved that Bernard Battaglin and Marco Magneabosco each received similar threatening letters about the same time Parise received his threatening letters; that buildings belonging to Battaglin and Magneabosco were damaged by bombs, and that each of them thereafter paid money to plaintiff in error in settlement of the demand of the Black Hand. The letter to Battaglin was received by him prior to the time Parise received his letter, and the letter to Magneabosco was received some time during the same month, but he is not certain of the day. It is contended that it was error to receive this evidence.

Where a specific intent is an essential element of a crime and the prosecution must prove this specific intent in order to secure a legal conviction, evidence of similar acts committed by the accused, happening at or about the same time, is relevant and competent to show such intent. (*People* v. *Hobbs,* 297 Ill. 399; *Schintz* v. *People,* 178 id. 320; *Thomas* v. *People,* 59 id. 160; *Higgins* v. *State,* 157 Ind. 57, 60 N. E. 685; *Wood* v. *United States,* 16 Pet. 342; 1 Wharton on Crim. Evidence,—10th ed.—sec. 35.) That evidence offered proves or tends to prove an offense other than the one with which the accused is charged is never a valid objection to its admissibility. (*People* v. *Spaulding,* 309 Ill. 292; *State* v. *Lapage,* 57 N. H. 245, 24 Am. Rep. 69; 1 Wigmore on Evidence,—2d ed.—secs. 216, 305; Ros-

coe on Crim. Evidence,—6th Am. from 6th London ed.—
*86.) When such evidence is offered, the same consider-
ations with respect to its admissibility arise as upon the
offer of any other evidence. The test of admissibility of
evidence is the connection of the facts proved with the
crime charged, and whatever testimony tends directly to
show the accused guilty of the crime charged is competent
although it tends to show him guilty of another offense.
(*People* v. *Cione,* 293 Ill. 321; *Glover* v. *People, supra.*)
But evidence of other offenses wholly disconnected with
the offense charged is not admissible, for the reason that
it does not tend to establish the fact in controversy. (*Peo-
ple* v. *Heffernan,* 312 Ill. 66; *People* v. *Ensor,* 310 id. 483;
*People* v. *Lane,* 300 id. 422; *People* v. *Reed,* 287 id. 606.)
Occasionally the principle which admits proof of facts re-
vealing other crimes is spoken of as though it involved an
exception to an otherwise general rule. The truth is, how-
ever, that it is itself an illustration of the general prin-
ciple that all facts affording any reasonable inference as to
the act charged are relevant and admissible, including facts
showing design, motive, knowledge, intent or the like, where
these matters are in issue or relevant. The exception to
this general principle is that evidence of conduct tending
and offered to show bad moral character is inadmissible.
(1 Wigmore on Evidence,—2d ed.—p. 461.)

Evidence of facts which show that the accused has com-
mitted offenses similar to the offense charged, for the pur-
pose of showing a specific intent or knowledge essential to
the establishment of the crime charged, has been admitted
in prosecutions for forgery, (*People* v. *Dougherty,* 266 Ill.
420; *Anson* v. *People,* 148 id. 494;) abortion, (*People* v.
*Hagenow,* 236 Ill. 514; *People* v. *Seaman,* 107 Mich. 348,
65 N. W. 203;) confidence game, (*People* v. *Shaw,* 300
Ill. 451; *People* v. *Weil,* 243 id. 208;) receiving stolen
property, (*People* v. *Baskin,* 254 Ill. 509; *Lipsey* v. *Peo-
ple,* 227 id. 364;) and embezzlement. (*People* v. *Duzan,*

272 Ill. 478; *Sheridan* v. *United States,* 236 Fed. 305, 149 C. C. A. 437; *People* v. *Hawkins,* 106 Mich. 479, 64 N. W. 736; *People* v. *Gray,* 66 Cal. 271, 5 Pac. 240; *Ross* v. *State,* 92 Ark. 481, 123 S. W. 756; *Stanley* v. *State,* 88 Ala. 154, 7 So. 273.) The holding to the contrary in *Kribs* v. *People,* 82 Ill. 425, and in *Baker* v. *People,* 105 Ill. 452, has been overruled by later decisions and is no longer the law in this State.

There has been no case in this State involving a prosecution for extortion by threats where this question has arisen, but the courts in other jurisdictions uniformly hold that such evidence is admissible for the purpose of showing the intent to extort. (*People* v. *Ryan,* 232 N. Y. 234, 133 N. E. 572; *Eacock* v. *State,* 169 Ind. 488, 82 N. E. 1039; *State* v. *Louanis,* 79 Vt. 463, 65 Atl. 532; *State* v. *Lewis,* 96 Iowa, 286, 65 N. W. 295; *Wallace* v. *State,* 41 Fla. 547, 26 So. 713; *State* v. *Vertrees,* 33 Nev. 509, 112 Pac. 42.) The offense with which section 93a of the Criminal Code deals is not established until it is proven that the accused sent the written communication threatening to murder or to destroy property with intent to extort money. The specific intent to extort being an essential element of the crime, it is clear that this case cannot be distinguished from other cases where it is necessary to prove a specific intent before a conviction can be had. (1 Wigmore on Evidence,—2d ed.—sec. 352.) To a charge for the sending of such a letter the defense might be offered that it was done in good faith to obtain compensation for a real or supposed injury, or that it was done to frighten the object of the threat and drive him from the community, or that it was done in jest; and the prosecution has the right to anticipate any of these plausible defenses and prove the specific intent by any competent evidence.

Proof of offenses similar to the one charged and for which the accused is being tried is not admissible to prove

that he committed the act charged but is only to be considered by the jury in determining the intent with which the act charged was done, where the jury are satisfied by the other evidence that the accused committed the act charged. (*People* v. *Hobbs, supra; Baxter* v. *State,* 91 Ohio St. 167, 110 N. E. 456.) Evidence which shows the commission of other offenses should be received with care, and the trial court should make clear to the jury that the evidence is being received for the sole purpose of showing the intent with which the act charged was done. Unless the admission of such evidence is kept within limitations pointed out by the authorities it may result in denying the prisoner that fair and impartial trial guaranteed by the law and may break down those barriers erected by the law and designed for the protection of the innocent. Evidence of the collateral offense should never be received until evidence has been produced which implicates the accused in the charge under trial, and unless sufficient evidence of this has, in the opinion of the trial judge, been first adduced, all evidence of other offenses should be excluded. (1 Wharton on Crim. Evidence,—10th ed.—sec. 32.) The court should instruct the jury, if so requested, that it should not consider the evidence of collateral offenses for any purpose whatever until after it has found from the other evidence in the case that the defendant has committed the acts charged in the indictment. There is no question made on the instructions given or refused in this case.

The record being free from prejudicial error, the judgment of the criminal court is affirmed.

*Judgment affirmed.*